IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                                       CASE NO. 4:03-cr-00045-SPM-AK

TORIANO ROBERTS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This matter is before the Court on Doc. 63, Motion to Vacate under 28 U.S.C. § 2255, by Toriano Roberts. The Government has filed its response, Doc. 68, and the time for filing a reply has expired without further argument from Defendant. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be granted in part and that Defendant be resentenced.

**BACKGROUND**

       Defendant was indicted for possession with intent to distribute more than 500 grams of cocaine. Doc. 2. Defendant retained David Collins to represent him. At the initial appearance, the Court advised Defendant that he faced a sentence of 5 years to 40 years imprisonment, but if he were subject to enhancement, he faced "10-Life." Doc. 5 at 3. Subsequently, the Government filed a Notice of Intent to Seek Enhancement pursuant to 21 U.S.C. § 851 based on Defendant's 1999 conviction for trafficking in cocaine, possession of cannabis, and possession of paraphernalia. Doc. 14. Though the Notice itself did not specify the enhanced penalties, with one prior felony drug conviction, Defendant did indeed face a minimum mandatory sentence of 10 years with a maximum sentence of life, just as the magistrate judge had previously advised

him. *See* 21 U.S.C. §841(b)(B).

Defendant proceeded to trial and was convicted. Doc. 29. Prior to sentencing, Mr. Collins filed several objections to the Presentence Report (PSR), including the amount of drugs attributed to him and the failure to give him an adjustment for acceptance of responsibility. Doc. 33. At sentencing, Mr. Collins made the following candid admission:

> Your Honor, one thing that's very important for this court to know, from my perspective, before my client speaks–and I want this to fall right where it needs to fall, and it's on my shoulders, I'll take full responsibility. Prior to this matter going to trial, I was under the impression that this case, with the enhancement, was a 20-to-life case instead of a ten-to-life case. The reason that that's important for this court to please consider is I don't believe if we had known that this was a ten-to-life case, that this trial would have necessarily occurred.
>
> * * *
>
> I would like the court to take into account seriously that that was an error on my behalf, and I seriously believe had we known it was a ten-to-life, as opposed to what we in good faith believed was a 20-to-life, this case would have resulted in a plea and not of a trial. Certainly the prospects of a minimum of 20 years, looking at it, is an impetus to try a case, as opposed to ten. Further, Your Honor, ten years is a lot of time. It's a lot of time. There's a minimum mandatory in this case, I think, of just a little over ten years.
>
> Given the fact that Mr. Roberts' attorney thought that–myself thought this was a 20-to-life, I would ask this court to really consider giving him the low end because he would have pled to that, Judge. That's all I have to say.

Doc. 50 at 3-4. Defendant declined to add to counsel's argument at that time. *Id*. at 4.

In response, the Government stated:

> We believe that the defendant knew what his penalties were prior to the trial. I don't accept the fact that the defense counsel now says there was a mistake. I think at the time of the initial appearance the magistrate told the defendant what his potential penalties were. At that time there was no enhancement filed, but there was an enhancement filed. The defendant went to trial, in my opinion, fully knowing what the consequences were to what his actual possible sentence was worth.

*Id*. at 9. In reply, counsel explained:

> The basis of my belief to a large part on the 20-to-life–which I'll take fault for because I can read a book just as well as anybody else, but the large basis was I relied upon what I believe [Government counsel] told me, that it was 20-to-life case with the enhancement. At that was–that's a fact. I would not set myself up here for a professional responsibility complaint or any other type of discipline, but that was a fact, and there's no misapprehension in that.

*Id*. at 10.

With regard to Defendant's objection to drug weights, the Court found:

The defendant is being held accountable for four kilograms of powder cocaine based on the PSR's very conservative estimates regarding the defendant's drug trafficking activities. I have credited the statements made by the defendant [to law enforcement] based on my own findings that the government has shown by a preponderance of the evidence that he voluntarily relinquished his right against self-incrimination and was aware of the consequences of doing so. Therefore, I find that he did indeed make statements to law enforcement officers...that he made between ten and 15 trips to Carol City where he would purchase between one quarter and one-half kilogram quantities of powder cocaine.

* * *

Therefore, attributing four kilograms of powder cocaine to the defendant, it is an accurate and cautiously moderate estimate, supported by a preponderance of the evidence, and his base level...is 30. Accordingly, the defendant's objection is overruled.

*Id*. at 12-13.

Regarding his request for a downward departure based on acceptance of responsibility, the Court concluded that because "defendant went to trial to challenge his factual guilt notwithstanding his prior admissions," he was not entitled to an adjustment for acceptance of

responsibility. *Id*. at 15.

The Court did not address counsel's admissions regarding his erroneous estimation of Defendant's sentencing exposure. He sentenced Defendant to 151 months imprisonment, the high end of the guideline range based on [Defendant's] serious criminal history, much of which did not contribute to [his] criminal history category." *Id*. at 16.

Defendant appealed his conviction, arguing (1) that the Court erred "by allowing the jury to hear his incriminating statements made to the law enforcement agents because his confession was involuntary," (2) that the Court erred in denying the motion for acquittal "since there was a variance between the evidence presented at trial by the government and the facts charged in the indictment, and therefore, the evidence was insufficient to support his conviction," and (3) that the Court abused its discretion in denying his proposed jury instructions. Doc. 59 at 3 of 9.

With regard to the first claim, the Eleventh Circuit found that the denial of the motion to suppress was not erroneous, as (1) the agents made no promises or threats prompting the inculpating statements, (2) Defendant talked to the agents despite being "exhaustively made aware of his rights to counsel and to remain silent, and (3) the confession was voluntarily made despite Defendant's refusal to sign the waiver. *Id*. at 4-5 of 9. As to his second claim, the court held:

> It does not appear that a variance occurred in this case because [Defendant's] indictment charging illegal possession with intent to distribute cocaine encompassed both actual and constructive possession. Accordingly, [he] did not suffer a Fifth Amendment due process violation. Additionally, the record supports the conclusion that [Defendant] actually and constructively possessed the cocaine.

*Id*. at 7 of 9. Finally, the court determined that the court did not abuse its discretion in rejecting Defendant's proposed jury instructions "because they constituted an erroneous statement of

law." *Id*. at 8 of 9.  Furthermore, the Court's instructions which included the phrase "the intention to later take control over something" were not erroneous but consistent with circuit law.  *Id*. at 9 of 9.  The court nevertheless remanded the case "to correct the clerical omission of the word 'months' from [Defendant's] written imprisonment sentence."  *Id*.

An amended judgment was subsequently entered in accordance with the Eleventh Circuit's directions.  Doc. 61.

The instant motion to vacate ensued.  Doc. 63.  On this occasion, Defendant raises five claims of ineffective assistance of counsel, each of which will be addressed in turn.

## **DISCUSSION**

Because all of Defendant's claims attack Mr. Collins' effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's

conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*,

466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

1.   Improper advice regarding sentencing exposure.

In this claim, Defendant maintains that if he had known that his minimum sentencing exposure was ten years, rather than twenty, he would have pled guilty and not gone to trial. According to him, he told counsel that he wanted to plead guilty "upon the appearance of a favorable plea-bargain." Doc. 63 at 9. In response, counsel, according to Defendant, told him that he was facing a minimum mandatory of 20 years to life, and therefore, "it was impossible to receive a favorable plea bargain." *Id*. Mr. Collins "vehemently encouraged [Defendant] to go to trial over his desire to plea guilty." *Id*. According to Defendant, he "followed counsel's poor advice and went to trial unbeknownst that his minimum mandatory with the government's proffered § 851 enhancement notice was ten-to-life," but "had he known the penalties were lot lesser, [Defendant] would have compelled counsel to ensue a plea bargain offer, opposed to

proceeding to trial." *Id*. at 11.

An attorney's failure to properly advise his client about sentencing exposure may constitute ineffective assistance of counsel. *United States v. Ridgeway*, 321 F.3d 512 (5th Cir. 2003) (citing *Teague v. Scott*, 60 F.3d 1167 (5th Cir. 1995)). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004); *see also Strickland*, 466 U.S. at 690-91; *United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999). When a defendant "'lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to [plead] or take his chances in court.'" *Grammas*, 376 F.3d at 436 (quoting *Teague*, 60 F.3d at 1171).

Counsel candidly admitted his error at the sentencing hearing and stated that Defendant would not have gone to trial if he had been properly advised regarding his sentencing exposure, a position Defendant reiterates in the instant motion, and the Court does not find it significant that Defendant allowed Mr. Collins to make these representations to the Court on his behalf without additional input from him. After all, that is what attorneys do. Thus, the Court flatly rejects the Government's suggestion that counsel's statements to the Court were "speculative" and unconfirmed by Defendant and that "there is no evidence he would have pleaded guilty." Doc. 68 at 5-6.

Furthermore, there is no doubt that counsel's estimation of Defendant's sentencing exposure was in error. The statute is clear that when a defendant has one prior felony conviction he faces a minimum mandatory sentence of ten years, not twenty years, imprisonment. Counsel made a ten-year error, and as the United States Supreme Court has

recognized, "Any amount of jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001). It is insufficient for counsel to discuss with his client the Guidelines and their application if he does not have a clear notion of his client's specific situation. Because Defendant was not provided with the correct information necessary for him to make an intelligent decision regarding whether to go to trial, trial counsel acted deficiently in this case.

Having found that counsel's performance fell below an objective standard of reasonableness, the Court must now determine whether, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. As applied to the instant case, the question is whether there is a reasonable probability that if Defendant, who plainly inculpated himself to officers when he was arrested, had pled guilty, rather than going to trial, he would have received a lesser sentence via a reduction for acceptance of responsibility. After careful consideration, this Court believes that there is indeed a reasonable probability that if Defendant had pled guilty, he would have received some amount of credit for acceptance of responsibility even if all other facts remain unchanged. While this Court is not in a position to determine whether the Court would have granted Defendant a reduction of two or three points if he had not gone to trial, a reduction of either amount would have significantly affected his sentence. Even if the Court had granted only a two-point reduction, the Guidelines range would have been 97-121 months,[1] and thus, even if the Court had persisted in sentencing him to the high end of the Guidelines based on his criminal history, as it did

---

[1] If the Court had granted a three-point reduction for acceptance of responsibility, then Defendant's Guidelines range would have been 87-108 months.

*Case No: 4:03-cr-00045-SPM-AK*

originally, there is a reasonable probability that his sentence would have been 30 months less than the one imposed, which represents a significant difference in the outcome of the proceedings.

While the Court cannot say with certainty that upon resentencing Defendant will receive any reduction for acceptance of responsibility,[2] it does not have to reach that threshold to find that Defendant was prejudiced by counsel's deficient performance.  Rather, the Court must only find a "probability sufficient to undermine confidence in the outcome" of the original proceeding, *Strickland*, 466 U.S. at 694, and the Court believes that Defendant has reached that threshold.

2.	Failure to inform Court that juror knew Defendant.

In this claim, Defendant charges that Mr. Collins acted ineffectively when he allowed a juror, Clamita Whitehead, to remain on the jury despite the fact that Defendant knew her "personally, who worked at FAMU New Beginners, children school in Tallahassee, Florida where his daughter attended."  According to Defendant, after he told counsel that he knew Ms. Whitehead, counsel advised him "not to say anything about Ms. Whitehead's perjury because it might work in his favor–having her sit on the jury."  Doc. 63 at 14-15.

"A relationship between a juror and defendant, albeit a remote one, can form the basis of a challenge for cause."  *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984).  Even if the Court assumes that counsel acted deficiently in failing to challenge Ms. Whitehead for cause, he cannot establish that he was prejudiced thereby, i.e., that there is a reasonable probability that the outcome of the proceedings would have been different.  The evidence of Defendant's guilt

---

[2]The Court can, however, say with a greater degree of certainty that Defendant is not eligible for a sentence less than the 10-year mandatory minimum unless the Government were to move for a downward departure based on substantial assistance.

was overwhelming–he was caught red-handed with the drugs and made incriminating admissions to law enforcement--and even if Ms. Whitehead had been replaced, there is not the remotest chance that he would have been acquitted of the charges against him.

      3.      Improper stipulation to drug type.

In this claim, Defendant charges that counsel rendered ineffective assistance of counsel by stipulating that the drugs recovered from Defendant's rental car were cocaine. An attorney does not act deficiently for entering into a stipulation without his client's consent. During discovery, the Government provided counsel with a report establishing that the grease-coated bricks found in the rental car were 771.7 grams of cocaine. Doc. 68, Ex. A. Defendant admitted to officers that the drugs found in the rental car were cocaine, and thus, challenging the chemist's conclusions would have been frivolous and a waste of time. Furthermore, Defendant was not prejudiced by the stipulation. Had counsel chosen to put the Government to its burden of proof on this matter, the Florida Department of Law Enforcement chemist would have testified, explaining his education and experience and the testing methodology and ending with the same conclusion that the bricks were indeed cocaine.

As a footnote, Defendant charges that counsel prevented him from testifying in his own behalf. The record is plainly to the contrary. Doc. 51 at 190-91. At the conclusion of the Government's case, Defendant was placed under oath at Mr. Collins' request, and he unequivocally stated that he understood that he had the right to testify, that the decision in that regard was his alone to make, and that he did not want to take the stand. *Id*.

      4.      Failure to object to sentencing enhancement.

In this claim, Defendant alleges that counsel rendered ineffective assistance (1) when he

failed to insist that the Court follow the procedures under § 851 for establishing the prior enhancing conviction and (2) when he did not investigate the validity of the enhancing conviction.

There are statutory procedures for establishing a prior conviction pursuant to 21 U.S.C. § 851:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

Although Defendant was not afforded the opportunity to question the validity of the prior conviction at the sentencing hearing, he was theoretically afforded that opportunity before he appeared for sentencing. Pursuant to § 851(c), if a defendant denies the prior conviction listed in the § 851 Information or claims that the conviction is invalid, he must file a written response to the Information. § 851(c)(1). The Court must then hold a hearing "to determine any issues raised by the response which would except the person from increased punishment," with the Government bearing the "burden of proof beyond a reasonable doubt on any issue of fact." *Id*. If the defendant claims that the conviction listed in the Information was obtained in violation of the United States Constitution, he "shall set for his claim, and the factual basis therefor, with particularity in his response to the information." § 851(c)(2). The defendant then bears the "burden of proof by a preponderance of the evidence on any issue of fact raised by the response." *Id*. "Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown

for failure to make a timely challenge." *Id*.

According to him, however, counsel never showed him the Information or otherwise advised him that the Government was seeking an enhancement, and because the Court did not then review with him the conviction which was being used to enhance his sentence, he "couldn't properly prepare to challenge said enhancement penalty." Doc. 63 at 21. He complains that the conviction used to enhance his sentence was constitutionally infirm because the state court "failed to conduct a colloquy to determine whether or not he <u>waived</u> his Sixth Amendment rights to be tried by a jury before entering a plea of nolo contendere." *Id*. at 22. If counsel had investigated the "ramifications of the prior conviction" or secured the state court records, then there is a "reasonable probability that the prior conviction may not have been used to enhance his sentence." *Id*. at 22-23.

Defendant is imminently correct that counsel acted deficiently in failing to insist that the Court adhere to the procedural requirements of § 851(b), since the Eleventh Circuit "has insisted upon strict compliance with the mandatory language" of the statute when the qualifying conviction is challengeable. *United States v. Weaver*, 905 F.2d 1466, 1481-82 (11th Cir. 1990). This is so because there are ramifications to failing to challenge an enhancing conviction before the imposition of sentence. *See* 21 U.S.C. § 851(c)(2).

Therefore, the question is whether Defendant was prejudiced by counsel's failure in this regard. According to records from the Circuit Court of Broward County, Defendant, with assistance from appointed counsel, waived his right to jury trial and entered a change of plea in Cause No. 98-635CF10A on November 5, 1998. Doc. 63, Ex. B at 2-3. He does not otherwise dispute the representations of the PSR that this was a drug felony for which he was imprisoned

for 21 months.  Thus, Defendant was not prejudiced by counsel's failure to object to the Court's procedures at sentencing since the state court record refutes Defendant's proposed challenge to the conviction.  Furthermore, even if the Court assumes counsel failed to investigate the circumstances of the state court proceeding, he cannot establish prejudice thereby for the same reason.  In short, there is not a reasonable probability that if counsel had demanded the Court adhere to the § 851 requirements or had filed a written challenge to the state court felony drug conviction at issue, the Court would not have imposed the enhanced sentence.

       5.       Failure to challenge sentence on *Blakely* grounds.

In his final claim, Defendant charges that counsel rendered ineffective assistance when he failed to challenge his sentence on appeal based on *Blakely*.  Though the Court does not believe there was *Booker* error here, since (1) Defendant's sentence was based, in part, on drug quantities he admitted to law enforcement, (2) he was subject to a statutory mandatory minimum sentence in any event, and (3) even after Booker, he may sentenced to an enhanced sentence based on judicial fact-finding, *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006), the Court would recommend that in resentencing Defendant, the Court make clear that its decision is based on an advisory, not mandatory, Guidelines system and that all requirements of *Booker* have been considered.

## **CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED**:

That the motion of Defendant Toriano Roberts to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Doc. 63, be **GRANTED IN PART AND DENIED IN PART**;

That the sentence imposed on April 19, 2004, be **VACATED**;

*Case No: 4:03-cr-00045-SPM-AK*

That Defendant be **RESENTENCED** in full accordance with the requirements of *Booker* as if he had entered a plea of guilty to Count 1 of the indictment and had not gone to trial; That counsel be **APPOINTED** to represent Defendant if a sentencing hearing is necessary.

**IN CHAMBERS** at Gainesville, Florida, this ***9th*** day of August, 2007.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**